# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**NATIONWIDE MUTUAL INSURANCE**
**COMPANY**                                                           **PLAINTIFF**

v.                                    CIVIL ACTION NO. 2:11-CV-232-KS-MTP

**KAVANAUGH SUPPLY, LLC, et al.**                                     **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

For the reasons stated above, the Court **denies** Plaintiff's Motion for Summary Judgment [35].

## I. BACKGROUND

This is a liability insurance coverage dispute stemming from a case before the Circuit Court of Forrest County, Mississippi. Eva Camodeca filed a lawsuit against Kavanaugh Supply, LLC d/b/a Freedom Healthcare ("Kavanaugh"). According to Camodeca's Second Amended Complaint, her mother, Peggy Karl, was hospitalized during early 2010. When Karl left the hospital, she was on a ventilator machine owned and supplied by Freedom Healthcare. The ventilator failed within thirty to forty-five minutes of Karl arriving home, and its alarm failed to sound. Karl died shortly thereafter, but Camodeca alleged that family members were home that would have been alerted to the ventilator's failure if the alarm had functioned properly. Accordingly, Camodeca alleges that the negligent acts and omissions of Freedom Healthcare's employees and the failure of Freedom Healthcare's ventilator and alarm caused Karl's death.

At the time of these events, Kavanaugh was insured under a businessowner policy issued by Nationwide Mutual Insurance Company ("Nationwide"). Accordingly, Kavanaugh demanded that Nationwide provide it with a defense against Camodeca's suit. Nationwide has done so under a reservation of its right to later deny coverage. Nationwide eventually filed this action, naming both Kavanaugh and Camodeca as Defendants. Nationwide seeks a declaratory judgment that the policy provides no coverage for the claims asserted by Camodeca against Kavanaugh, and, therefore, that it has no duty to defend or indemnify Kavanaugh in the state court action. Nationwide filed a motion for summary judgment, which is ready for the Court's review.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

#### A. *Duty to Defend*

To determine whether an insurance company has a duty to defend its policyholder against suit, the Court looks "at the facts alleged in the complaint, together with the policy." *Auto. Ins. Co. of Hartford v. Lipscomb*, 75 So. 3d 557, 559 (Miss. 2011). An insurer has a duty to defend once it "has knowledge that a complaint has been filed that contains allegations of conduct covered by the policy." *Id.*; *see also Titan Indem. Co. v. Pope*, 876 So. 2d 1096, 1101 (Miss. Ct. App. 2004) (". . . the insurer has a duty to defend when there is any basis for potential liability under the policy."). There is no duty to defend if "the alleged conduct falls outside the policy's coverage," but if the insurer "becomes aware that the true facts, if established, present a claim against the insured which potentially would be covered under the policy, the insurer must provide a defense until it appears that the facts upon which liability is predicated fall outside the policy's coverage." *Id.*

3

The Court's ultimate goal in applying an insurance policy is to "render a fair reading and interpretation of the policy by examining its express language and applying the ordinary and popular meaning to any undefined terms." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009). "In Mississippi, insurance policies are contracts, and as such, they are to be enforced according to their provisions." *Id.*

> First, where an insurance policy is plain and unambiguous, a court must construe that instrument, like other contracts, exactly as written. Second, it reads the policy as a whole, thereby giving effect to all provisions. Third, it must read an insurance policy more strongly against the party drafting the policy and most favorably to the policy holder. Fourth, where it deems the terms of an insurance policy ambiguous or doubtful, it must interpret them most favorably to the insured and against the insurer. Fifth, when an insurance policy is subject to two equally reasonable interpretations, a court must adopt the one giving the greater indemnity to the insured. Sixth, where it discerns no practical difficulty in making the language of an insurance policy free from doubt, It must read any doubtful provision against the insurer. Seventh, it must interpret terms of insurance policies, particularly exclusion clauses, favorably to the insured wherever reasonably possible. Finally, although ambiguities of an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.

*Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*, 515 F.3d 414, 419 (5th Cir. 2008); *see also Corban*, 20 So. 3d at 609; *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So. 3d 1270, 1281 (Miss. 2009); *United States Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008).

The policy [23-2] provides that Nationwide will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' to which" the insurance applies, and that Nationwide will "have the right and duty to defend the insured against any 'suit'

4

seeking those damages. However, Nationwide has no duty to defend or indemnify against any suit seeking damages for injuries to which the insurance does not apply, and the policy includes the following exclusion:

> **B.  Exclusions**
>
>     **1.  Applicable to Business Liability Coverage**
>
>     This insurance does not apply to:
>
>     * * *
>
>     **j.  Professional Services**
>
>         "Bodily injury", "property damage", "personal injury" or "advertising injury" due to rendering or failure to render any professional service. This includes but is not limited to:
>
>         * * *
>
>         (4)  Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction; [and]
>
>         (5)  Any health or therapeutic service treatment, advice or instruction . . . .

Therefore, Nationwide argues that it has no duty to defend or indemnify Kavanaugh against Camodeca's lawsuit because her substantive complaint is that Kavanaugh's agent caused Karl's death while providing professional services. In response, Kavanaugh argues that Camodeca's lawsuit is a product liability action.

Camodeca originally framed the lawsuit as a medical malpractice action, including an affidavit from her attorney certifying compliance with the notice requirement of Mississippi Code Section 15-1-36(15). In the Second Amended Complaint, however, she acknowledged that depositions had "revealed [Kavanaugh]

5

was the seller/renter only of medical equipment and did not furnish home health services, and/or any type of nursing care as indicated in" her previous complaint. She added language concerning equipment failure, alleging that Karl died because of "conditions and injuries caused in whole or in part by the negligent and/or grossly negligent acts, omissions, and the failure of the equipment supplied by . . . the staff of [Kavanaugh], and/or specifically the failure of the subject respirator (ventilator) and/or alarm system owned and maintained by [Kavanaugh]." Therefore, the Court concludes that Camodeca – in her Second Amended Complaint – intended to assert a cause of action for the failure of the ventilator, rather than the alleged provision of professional services. Accordingly, the professional services exclusion is inapplicable.

Nationwide notes language remaining in the Second Amended Complaint concerning Kavanaugh's "duty to provide that level of care that was within the standards expected from a similar provider," as well as Camodeca's citation of medical malpractice statutes. It argues that these aspects of the Second Amended Complaint indicate that Camodeca's lawsuit is actually a medical malpractice case, rather than a product liability case. However, Camodeca clearly attempted to assert a product liability claim, alleging that Karl died because the ventilator failed. Even if the Second Amended Complaint embraces both medical malpractice and product liability theories, Nationwide still has a duty to defend because the operative pleading "contains allegations of conduct covered by the policy." *Lipscomb*, 75 So. 3d at 559; *see also Pope*, 876 So. 2d at 1101 (". . . the insurer has a duty to defend when there is any basis for potential liability under the policy.").

6

Nationwide also argues that Camodeca failed to allege sufficient facts to state a claim for relief under the Mississippi Products Liability Act, or to even refer to the statute. However, the Court is neither obliged nor authorized to assess the sufficiency of Camodeca's state court pleading. Rather, the Court must merely determine whether the state court pleading "contains allegations of conduct covered by the policy." *Lipscomb*, 75 So. 3d at 559. Camodeca alleged that the ventilator supplied by Kavanaugh failed and caused her mother to die, and Nationwide does not dispute that a product liability claim would be covered by the subject policy.[1]

For all of these reasons, the Court finds that Nationwide has a duty to defend Kavanaugh in the underlying state court action.

## B.     Duty to Indemnify

Nationwide also seeks summary judgment as to its duty to indemnify Kavanaugh for any award of damages that may ultimately be granted to Camodeca in the underlying state court action. "Under Mississippi law, an insurer's duties to defend and indemnify its insured are distinct and separate duties requiring the use of different standards." *Estate of Bradley v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 529 (5th Cir. 2011). "Unlike the duty to defend, which can be determined at the beginning of the lawsuit, an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all." *Id.*

---

[1]To be clear, the Court does not hold that a product liability claim would be covered by the subject policy. Addressing Nationwide's motion does not require resolution of that issue.

at 531. "This is because, unlike the duty to defend, which turns on the pleadings and the policy, the duty to indemnify turns on the actual facts giving rise to liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the policy." *Id.*

As far as this Court is aware, no judgment has been entered in the underlying state court action. No jury has addressed the questions of fact which would determine whether the subject policy provides coverage for any potential damages awarded to Camodeca. Therefore, it is impossible for the Court to determine whether Nationwide will have a duty to indemnify Kavanaugh against such an award.

### IV. CONCLUSION

For the reasons stated above, the Court **denies** Plaintiff Nationwide Mutual Insurance Company's Motion for Summary Judgment [35].

SO ORDERED AND ADJUDGED this 26th day of February, 2013.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE